**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL A. LEE,** | : | |
| **Petitioner** | : | |
| | : | **No. 1:21-cv-1504** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **E. BRADLEY,** | : | |
| **Respondent** | : | |

## <u>MEMORANDUM</u>

On August 31, 2021, *pro se* Petitioner Michael A. Lee ("Petitioner"), who is currently incarcerated at the United States Penitentiary Canaan ("USP Canaan") in Waymart, Pennsylvania, initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging an incident report he received while incarcerated at the Federal Correctional Institution Gilmer ("FCI Gilmer") in Glenville, West Virginia.  (Doc. No. 1.)  Petitioner paid the requisite filing fee on September 21, 2021.  (Doc. No. 6.)  In an Order entered September 22, 2021, the Court directed Respondent to show cause why Petitioner should not receive the relief he seeks.  (Doc. No. 7.)  Respondent filed his response on October 12, 2021.  (Doc. No. 9.)  Petitioner filed his traverse (Doc. No. 10) and a motion to subpoena Unit Manager Clem to testify (Doc. No. 11) on October 29, 2021.  Petitioner's § 2241 petition is, therefore, ripe for disposition.

## I.    BACKGROUND

On March 20, 2022, the United States District Court for the Eastern District of North Carolina sentenced Petitioner to serve 360 months' incarceration for conspiracy to distribute cocaine and a consecutive term of sixty (60) months' for carrying a firearm during a drug trafficking offense.  (Doc. No. 9-1 at 119-20.) Subsequently, the court reduced Petitioner's sentence on the conspiracy conviction to 202 months' incarceration.  (*Id.* at 119.)  Petitioner, therefore, is serving an aggregate sentence of 262 months' incarceration.  His anticipated release date, with good conduct time ("GCT") factored in, is April 5, 2022.  (*Id.* at 118.)

### A.    Facts Regarding Incident Report #3246747

On April 17, 2019, Officer Gainer approached Petitioner's cell after noticing that he had covered the camera located inside his cell.  (*Id.* at 123.)  The officer also noted that the cell window was covered.  (*Id.*)  Officer Gainer ordered Petitioner to uncover his window and submit to hand restraints; Petitioner refused.   (*Id.*) Petitioner stated, "Do what you gotta do, I'm a do what I gotta do.  I'm a f*** one of ya all up if you come in here."  (*Id.*)  Officer Gainer issued Incident Report #3246747, charging Petitioner with a violation of Code 307, refusing an order, and 203, threatening another with bodily harm or any other offense.  (*Id.*)  Petitioner received a copy of the Incident Report that same day. (*Id.*)  The investigating officer,

2

Lieutenant Bishoff, advised Petitioner of his rights and noted that Petitioner stated, "No comment." (*Id.* at 124.)

The Incident Report was forwarded to the Unit Discipline Committee ("UDC") for further action. (*Id.*) The UDC hearing was initially conducted on April 20, 2019,[1] and the Incident Report was referred to the DHO. (*Id.* at 126.) However, the DHO remanded the Incident Report for further investigation because Lieutenant Bishoff had been involved in the incident. (*Id.* at 126, 134.) A new Incident Report, investigated by Lieutenant Boatwright, was issued to Petitioner on April 23, 2019. (*Id.* at 125.) Lieutenant Boatwright advised Petitioner of his rights, and Petitioner provided the following statement: "This incident never happened, I never even spoke to Officer Gainer. The two staff I spoke to were Lt. Bishoff and Officer Frazier, they came to my door and video should prove this. Officer Gainer never stopped at my door or had a conversation with me, Officer Gainer never opened the food slot to even give me the opportunity to submit to restraints." (*Id.*) Because of the delay caused by reissuing the Incident Report, staff received approval from the Warden to conduct the UDC hearing outside of the normal time limitations. (*Id.* at 126.) The UDC hearing was held on April 26, 2019. (*Id.* at 127.) Petitioner was advised of his rights at that time. (*Id.* at 128.) He requested that R. Clem serve as his staff

---

[1] It is unclear whether Petitioner appeared at this initial UDC hearing. The record contains a document waiving his right to appeal, but it was not signed by Petitioner. (Doc. No. 9-1 at 130.)

representative and that inmate Johnnie Banks appear as a witness on his behalf. (*Id.* at 129.)

Petitioner appeared before the DHO on May 10, 2019. (*Id.* at 132.) The DHO confirmed that Petitioner understood his rights. (*Id.*) Unit Manager Clem appeared and noted that Petitioner had requested that he review the video footage, which he did. (*Id.*) Unit Manager Clem stated that the video showed Petitioner covering the window of the cell door, the officers standing in front of the cell door, and Petitioner finally uncovering his window. (*Id.*) Dr. Wagner was also on the scene for "confrontation avoidance." (*Id.*) Petitioner provided the following statement, "I never made this statement to Officer Gainer. Even if I did make the statement how could he hear me. The officers always say how loud it is down there and they have to put [their] ear to the door anytime we try to talk to them." (*Id.*) Inmate Banks appeared and stated, "I was in the cell next to Lee, I don't remember him saying anything to Gainer." (*Id.* at 133.) Petitioner also had provided a written statement to the UDC, which the DHO asked that he read aloud because two (2) of the pages were illegible. (*Id.* at 134.)

The DHO found Petitioner guilty of Code 299, disruptive conduct most like a violation of Code 203, threatening another person. (*Id.* at 133-34.) In doing so, the DHO considered the Incident Report, statements made by Petitioner and his witness,

photographs, injury assessments, Petitioner's clinical encounter report, and staff memoranda. (*Id.* at 133.) The DHO sanctioned Petitioner with disallowance of twenty-seven (27) days' GCT, thirty (30) days of disciplinary segregation, and six (6) months' loss of commissary and phone privileges. (*Id.* at 135.) Petitioner received a copy of the DHO report on June 20, 2019. (*Id.* at 136.) He subsequently exhausted his administrative remedies with respect to this Incident Report. (*Id.* at 109.)

**B.    Summary of Petitioner's § 2241 Petition**

Petitioner then filed the instant § 2241 petition. (Doc. No. 1.) In his petition, Petitioner argues that his due process rights were violated because: (1) the DHO intentionally misrepresented the statement made by his staff representative; (2) he did not have a UDC hearing twenty-four (24) hours before the DHO hearing; (3) the charging document is not a true Incident Report and a second incident report was never issued after it was remanded; (4) Lieutenant Bishoff added an offense to the Incident Report; (5) the Incident Report contains an incorrect time for when the offense occurred; and (6) the DHO changed the offense code without any notice to Petitioner. (*Id.* at 6-8.) As relief, Petitioner requests that the BOP expunge the Incident Report and restore his GCT. (*Id.* at 7.)

5

## II.    DISCUSSION

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002).  It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court has held that that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. *Id.* at 557.  Because Petitioner's sanctions included the loss of good conduct time, he has identified a liberty interest.

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418

6

U.S. at 563-67.  The Supreme Court has held that the standard of review about the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board."  *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992).  If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff.  *Hill*, 472 U.S. at 457.  The *Hill* standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence.  *See Thompson v. Owens*, 899 F.2d 500, 501-502 (3d Cir. 1989).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled *Inmate Discipline and Special Housing Units*.  These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court.  *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).  Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful.  28 C.F.R. § 541.5.  Under the regulations, an inmate "*ordinarily* receives[s] the incident report within 24 hours of staff becoming aware of . . .

involvement in the incident." *Id.* § 541.5(a) (emphasis added). The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends or holidays. *Id.* § 541.7(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. *Id.*

A DHO "will only conduct a hearing on the incident report if referred by the UDC." 28 C.F.R. § 541.8. An inmate will receive written notice of the charges 24 hours before the DHO hearing unless the inmate waives the notice requirement in which case the DHO can conduct the hearing sooner. *Id.* The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. *Id.* After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the

8

incident report back for further investigation, review and disposition. *Id.* If an inmate is found to have committed a prohibited act, the DHO can impose any of the available sanctions listed in Table 1 and 2 of § 541.3. *Id.* Finally, the written report or decision of the DHO will contain the following: (1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. *Id.*

### A.    Petitioner Received His Due Process Rights

The record reflects that Petitioner received his procedural due process rights under *Wolff* and the BOP regulations. Petitioner initially received a copy of the Incident Report on April 17, 2019. (Doc. No. 9-1 at 123.) He received the new Incident Report following remand on April 23, 2019. (*Id.* at 125.) Petitioner asserts that he was never given advance notice of the charges prior to the DHO hearing. (Doc. No. 2 at 1.) Petitioner, however, appeared before the DHO on May 10, 2019, well more than twenty-four (24) hours after he received the new Incident Report. (*Id.* at 132.) Unit Manager Clem served as Petitioner's staff representative, and inmate Banks appeared as a witness on his behalf. (*Id.* at 132-33.) Finally, Petitioner received a copy of the DHO's written decision, which included a review of the

evidence relied upon and the rationale behind the disciplinary action, on June 20, 2019.  (*Id.* at 136.)

Petitioner now asserts that he never went to a UDC hearing prior to the DHO hearing.  (Doc. No. 1 at 6.)  Specifically, he asserts that he never went to a UDC hearing and never received the Incident Report after the DHO remanded the matter for further investigation.  (Doc. No. 2 at 2.)  According to Petitioner, his counselor and Lieutenant Boatwright merely crossed out dates and times on the UDC paperwork.  (*Id.* at 2-3.)  BOP regulations provide that an inmate is "permitted to appear before the UDC during its review of the incident report."   28 C.F.R. § 541.7(d).   However, even if Petitioner was not present for the UDC hearing on April 26, 2019, he has demonstrated no prejudice from his absence, nor has he shown that § 541.7(d) itself created a liberty or property interest such that its alleged violation violated his due process rights.  *See Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011).  Moreover, nothing in the record supports Petitioner's assertion that the form used by Lieutenant Boatwright is not a "true/official BOP document." (Doc. No. 2 at 3.)  Rather, it appears that Lieutenant Boatwright completed the investigation portion of an Incident Report form and included that with the other pertinent paperwork following remand by the DHO.  Moreover, while Petitioner alleges that Lieutenant Boatwright never served the new Incident Report and instead

alleged that he served it on April 29, 2019, the record reflects, in several locations, that he did so serve the new Incident Report upon Petitioner on April 23, 2019. (Doc. No. 9-1 at 125, 132.)

Petitioner also alleges that his due process rights were violated because Lieutenant Bishoff handwrote a violation of Code 307, disobeying an order, on the Incident Report. (Doc. No. 1 at 8.) Petitioner asserts that this violated BOP policy because the reporting officer is the only individual, besides the DHO, who can add offenses. (*Id.*) However, as noted *supra*, the DHO did not find that Petitioner committed a violation of Code 307. Thus, he was not denied due process by its addition and has not demonstrated how he was prejudiced by its inclusion in the Incident Report.

Petitioner also alleges that the DHO violated his due process rights by changing the charged offense to a Code 299, most like Code 203. However, the fact that the Incident Report did not charge Petitioner with a violation of Code 299, most like Code 203, is of no consequence. "[P]ursuant to 28 C.F.R. § 541.8(a)(1), a DHO has the authority to find that an inmate 'committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report." *Guerrero v. Recktenwald*, 542 F. App'x 161, 164 (3d Cir. 2013). In the instant case, Incident Report #3246747 set forth facts regarding how Petitioner threatened staff when they

ordered him to uncover his window.  The DHO considered these facts, and therefore, "acted within his authority to conclude that [Petitioner] committed a similar . . . offense t[o] the offense with which he was charged[,] and [Petitioner] received adequate notice of the proceedings against him."  *Guerrero*, 542 F. App'x at 164. Thus, the Court finds that Petitioner received all the procedural due process procedures to which he was entitled.

### B.   The DHO Decision Was Based on Sufficient Evidence

With respect to the sufficiency of the evidence, Respondent has included the Incident Report and the DHO report.   (Doc. No. 9-1.)   These documents unequivocally establish that there was some evidence supporting the DHO's decision.

The DHO stated the following in his decision finding Petitioner guilty of Code 229:

> Your due process rights were reviewed with you by the DHO at the time of the hearing.  You stated you understood your rights and submitted a 3 page written statement during the UDC hearing.  You requested inmate Banks as a witness and he appeared and you requested Unit Manager R. Clem as a staff representative and he appeared.  You indicated to the DHO you were ready to proceed.
>
> The DHO notes that this incident report was sent back by the DHO to have a new investigation completed as Lieutenant D. Bishoff conducted the initial investigation and he was involved in this incident.  Lieutenant Boatwright conducted a new investigation on April 23, 2019.  The DHO also notes that due to this, the UDC staff had to request permission from

the Warden in order to conduct a new UDC hearing as the new hearing would have been outside of the normal time frames.  This memorandum was approved by the Warden on April 26, 2019 and the UDC staff conducted the new hearing on this same day.  Finally the DHO notes that you submitted a 3 page written statement to UDC staff for the DHO to review.  2 of these pages were illegible so the DHO asked you to read aloud these two pages during the DHO hearing and you complied.  In that written statement you made two allegations against staff members at FCI Gilmer and those allegations were forwarded to the appropriate staff at FCI Gilmer.

The DHO finds you to have committed the prohibited act of conduct disruptive to the orderly running of the institution most like threatening another person, Code 299 most like Code 203.

The DHO bases this decision on the written statement of the reporting officer: On the 17th day of April, 2019, I, Senior Officer B. Gainer approached cell z01-101 occupied by [Petitioner] after observing that he had covered the camera located in his cell.  As I approached [Petitioner's] cell I also noticed that he had his cell window covered.  I then ordered [Petitioner] to uncover his window and submit to hand restraints.  [Petitioner] then refused to uncover his window and submit to hand restraints.  [Petitioner] then stated, "Do what you gotta do, I'm a do what I gotta do.  I'm a f*** one of ya all up if you come in here." I then exited the range.

In addition to the written report the DHO also considered a memorandum dated April 17, 2019 from D. Bishoff, Lieutenant in which he states that at approximately 8:10 A.M. on April 17, 2019 he came to your assigned cell and observed your window to be covered and he asked to speak with you.  He further states that once you were done speaking with him you covered [your] cell door window back up.  He states that another staff member then gave you an order to uncover your door window and submit to hand restraints and he then heard you state "Do what you have to do, I'm going to do what I have to do.  I'm going to f*** one of you up if you come in here."

13

You denied the charge and stated as your defense "I never made this statement to Officer Gainer.  Even if I did make the statement how could he hear me.  The officers always say how loud it is down there and they have to put [their] ear to the door anytime we try to talk to them."

The DHO considered your defense in which you deny making a threatening statement during this conversation.  However, the DHO relied on the eyewitness account of the reporting staff member.  Officer Gainer is clear in his report that he approached your cell and noticed your window was covered.  Further clear is that he then gave you an order to uncover your window and submit to hand restraints and you refused both orders and then stated "Do what you gotta do, I'm a do what I gotta do.  I'm a f*** one of ya all up if you come in here."  Although you deny making this statement the DHO finds no obvious reason for the staff member to fabricate this incident report and believes the staff members' observation was made strictly in the performance of his duties.  Furthermore, the reporting officer is under a legal obligation to report truthful and accurate facts, whereas, you had much to lose by accepting responsibility or being truthful in this matter and the DHO believes that you are denying your role in this incident in an effort to avoid being sanctioned for your actions.  Additionally another staff member was present during this incident and also heard you make this statement, which further supports Officer Gainer's account of the incident.

Furthermore, although your statement was not a direct communication to cause harm to a staff member, the DHO believes that any reasonable person, in this same circumstance, would interpret your statement of "I'm a f*** one of ya all up if you come in here" as a means to intimidate or communicate a threat to cause harm to that individual.

The DHO also considered your defense in which you claim that staff routinely have a difficult time hearing while in SHU and you claim it would have been difficult for Mr. Gainer to hear this statement even if you had made it.  Again the DHO relied on the eyewitness account of Officer Gainer in which he clearly states he heard you make this statement.  Additionally, Lieutenant Bishoff was present and also heard

14

you make this statement.  These staff are under a legal obligation to report truthful and accurate facts and the DHO believes the staff members' observations were made strictly in the performance of their duties.

The DHO considered your written statement you submitted and read aloud during the DHO hearing due to the statement being illegible. Along with allegations you make against FCI Gilmer staff in this statement, your statement was a continued denial of you making this statement.

The DHO considered the statement of your witness; however, greater weight was placed on the staff members' account as the DHO believes this witness may be less than truthful to assist you in avoiding the consequence of your actions.

The DHO also considered the statement of your staff representative in which he stated he reviewed the video footage of the incident. Although audio footage is not available on the camera footage, Mr. Clem stated that he did observe[] Officer Gainer standing in front of your cell at approximately 8:10 A.M., which contradicts your claim you made to the investigating lieutenant in which you stated Officer Gainer never stopped at your cell.  Mr. Clem's review of the video clearly supports that Officer Gainer was near your cell door at the time of the incident.  Furthermore Mr. Clem reports that your cell door window was initially covered at the start of the incident, but at some point you did uncover your window.  The DHO informed you that the charge against you was for making a threatening statement to the staff member and the issue of when and for how long your cell door window was covered was irrelevant to the DHO in regards to this charge.

Therefore, based on the evidence outlined above, the DHO finds the greater weight of the evidence to support you committed the prohibited act of conduct disruptive to the orderly running of the institution most like threatening another person, Code 299 most like Code 203.

(Doc. No. 9-1 at 133-35.)   Moreover, the DHO explained the imposed sanctions,

stating:

> Making [veiled] threats to a staff member promotes disrespect for the
> staff member and seriously detracts from the staff member's ability to
> maintain control of his assigned area of responsibility which not only
> disrupted the security and orderly operation of the institution, but
> created the potential for a larger disturbance to occur as well.
>
> The DHO disallowed this inmate's good conduct time in accordance
> with his sentencing guidelines.  The DHO imposed the sanctions of
> disciplinary segregation and the loss of commissary and phone to let
> the inmate know that he and he alone will be held responsible for his
> actions/behavior at all times and to deter future behavior.

(*Id.* at 136.)

Petitioner suggests that there is not sufficient evidence to support the DHO's

finding because Officer Gainer made a mistake as to the time of the Incident Report.

(Doc. No. 1 at 8.)   Petitioner avers that Officer Gainer stated that the offense

occurred around 9:55 p.m., but that Lieutenant Bishoff noted that he gave Petitioner

the report at 12:50 p.m.  Petitioner alleges further that the video surveillance showed

that Officer Gainer was not at his cell door during the incident.  (Doc. No. 2 at 2.)

He also argues that the DHO intentionally misconstrued Unit Manager Clem's

statement, and that Unit Manager Clem had direct evidence that would exonerate

him, but was afraid to share it "unless the issue went to court."  (Doc. No. 1 at 6;

Doc. No. 1-3 at 2.)

When an inmate challenges the sufficiency of the evidence supporting the DHO's decision, "the 'some evidence' standard does not require . . . independent assessment of the credibility of witnesses or weighing of the evidence." *Speight v. Minor*, 245 F. App'x 213, 216 (3d Cir. 2007) (quoting *Hill*, 472 U.S. at 455-56).  As an initial matter, Petitioner does not describe, and the Court does not discern, how the typographical error regarding the time violated Petitioner's due process rights. Officer Gainer noted that he wrote the Incident Report at 9:55 p.m.; however, the fact that Lieutenant Bishoff served it upon Petitioner at 12:50 p.m. indicates that Officer Gainer's notation was an error and that he prepared the report at 9:55 a.m. Such typographical errors do not violate due process.  *See Millhouse v. Warden Lewisburg USP*, 785 F. App'x 931, 935 (3d Cir. 2019); *Crane v. White*, No. 4:20-cv-636, 2020 WL 4347382, at *3 (M.D. Pa. July 29, 2020).  Moreover, Petitioner provides no explanation as to how the DHO misrepresented Unit Manager Clem's statement and what evidence Unit Manager Clem possessed that would have exonerated him.

Petitioner also suggests that Officer Gainer falsified his report.  (Doc. No. 2 at 1.)  However, this claim "is not sufficient to establish a due process violation [because he had] the opportunity to rebut the allegedly false accusations and evidence." *See Willis v. Zickefoose*, No. 11-2077 (NLH), 2012 WL 2076827, at *9

17

(D.N.J. June 8, 2012); *see also Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002) noting that "so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim"). Furthermore, Unit Manager Clem's review of the video footage clearly indicated that Officer Gainer had been standing in front of Petitioner's cell at some point during the incident. (Doc. No. 9-1 at 132.) Contrary to Petitioner's suggestion, "some evidence" supports the DHO's conclusion that he was guilty of violating Code 299, most like Code 203. *See Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) (noting that a court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause").

Petitioner also appears to suggest that the Incident Report was issued in retaliation for his complaints against BOP staff. (Doc. No. 1-3 at 1.) This claim is properly raised in Petitioner's § 2241 petition because it relates to the loss of his GCT, which affects the duration of his sentence. *See Queen v. Miner*, 530 F.3d 253, 255 n.2 (3d Cir. 2008). However, the Court's determination that some evidence supports the DHO's decision negates Petitioner's retaliation claim. *See McGee v. Scism*, 463 F. App'x 61, 64 (3d Cir. 2012) (concluding that if a prison disciplinary committee's finding of a violation of prison rules is based on some evidence, that

"finding essentially checkmates [a] retaliation claim" (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994))); *Lasko v. Holt*, 334 F. App'x 474, 477 (3d Cir. 2009) (concluding that the inmate-petitioner's retaliation claim must fail because sufficient evidence supported the DHO's determination).

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner was accorded all of his due process rights under *Wolff* and that there was some evidence supporting the decisions made by the DHO.  Accordingly, Petitioner's § 2241 petition (Doc. No. 1) and motion to subpoena Unit Manager Clem to testify (Doc. No. 11) will be denied.  An appropriate Order follows.